**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| CONNECTRN, INC., | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: |
| | : | |
| BEECAN HEALTH, LLC, QP HEALTH CARE SERVICES, LLC, BEECAN HEALTH CO, LLC, BEECAN HEALTH MANAGEMENT, LLC, ALLISON CARE CENTER, LLC, HACKBERRY HILL OPCO, LLC, ARDENT HEALTH AND REHABILITATION CENTER, LLC, CAMBRIDGE CARE CENTER, LLC, COLONIAL HEALTH AND REHABILITATION CENTER, LLC, CREEKSIDE VILLAGE HEALTH AND REHABILITATION CENTER, LLC, CRESTMOOR HEALTH AND REHABILITATION CENTER, LLC, DENVER NORTH CARE CENTER, LLC, ELEVATION HEALTH AND REHABILITATION CENTER, LLC, LINDEN PLACE HEALTH AND REHABILITATION CENTER, LLC, PARKVIEW CARE CENTER, LLC, POUDRE CANYON HEALTH AND REHABILITATION CENTER, LLC, SOUTH PLATTE HEALTH AND REHABILITATION CENTER, LLC, and LOVELAND ELDER GREEN HOUSE HOMES FOR LIFE ENRICHMENT CORP., | : | |
| | : | |
|     Defendants. | : | NOVEMBER 18, 2024 |

**COMPLAINT**

Plaintiff connectRN, Inc., by and through its attorneys, McCarter & English, LLP, alleges

for its Complaint against Defendants Beecan Health, LLC, QP Health Care Services, LLC,

Beecan Health CO, LLC, Beecan Health Management, LLC, Allison Care Center, LLC, Hackberry Hill Opco, LLC, Ardent Health and Rehabilitation Center, LLC, Cambridge Care Center, LLC, Colonial Health and Rehabilitation Center, LLC, Creekside Village Health and Rehabilitation Center, LLC, Crestmoor Health and Rehabilitation Center, LLC, Denver North Care Center, LLC, Elevation Health and Rehabilitation Center, LLC, Linden Place Health and Rehabilitation Center, LLC, Parkview Care Center, LLC, Poudre Canyon Health and Rehabilitation Center, LLC, South Platte Health and Rehabilitation Center, LLC, and Loveland Elder Green House Homes for Life Enrichment Corp., as follows:

## PARTIES

1. Plaintiff connectRN, Inc. ("connectRN") is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Waltham, Massachusetts.

2. Defendant Beecan Health, LLC ("Beecan Health") is a limited liability company organized under the laws of the State of California, with its principal place of business located in Sacramento, California.

3. Defendant QP Health Care Services, LLC, which operates under the trade name Vivage Senior Living ("Vivage"), is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Glendale, Colorado.

4. Defendant Beecan Health CO, LLC ("Beecan CO") is a limited liability company organized under the laws of the state of Colorado, with its principal place of business in Boulder, Colorado.

5. Defendant Beecan Health Management, LLC ("Beecan Management") is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

6. Beecan Health is the parent company of Beecan CO and Beecan Management.

7. In or about February 2023, Beecan CO and Vivage merged operations in Colorado, creating an operation known as "Vivage-Beecan." Beecan Health, Beecan CO, Beecan Management, and Vivage are referred to collectively as "Vivage-Beecan."

8. Defendant Allison Care Center, LLC ("Allison Care"), which operates a healthcare facility called Allison Care Center located in Lakewood, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located in Boulder, Colorado.

9. Hackberry Hill Opco, LLC, which operates a healthcare facility called Arbor View Senior Living Community ("Arbor View"), is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located in Glendale, Colorado.

10. Defendant Ardent Health and Rehabilitation Center, LLC ("Ardent Health"), which operates a healthcare facility called Ardent Health and Rehabilitation Center, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located in Boulder, Colorado.

11. Defendant Cambridge Care Center, LLC ("Cambridge Care"), which operates a healthcare facility called Cambridge Care Center located in Lakewood, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

12. Defendant Colonial Health and Rehabilitation Center, LLC ("Colonial Health"), which operates a healthcare facility called Colonial Health and Rehabilitation Center in Colorado Springs, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

13. Defendant Creekside Village Health and Rehabilitation Center, LLC ("Creekside Village"), which operates a healthcare facility called Creekside Village Health and Rehabilitation Center located in Fort Collins, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

14. Defendant Crestmoor Health and Rehabilitation Center, LLC ("Crestmoor Health"), which operates a healthcare facility called Crestmoor Health and Rehabilitation Center located in Denver, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

15. Defendant Denver North Care Center, LLC ("Denver North"), which operates a healthcare facility called Denver North Care Center located in Denver, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

16. Defendant Elevation Health and Rehabilitation Center, LLC ("Elevation Health"), which operates a healthcare facility called Elevation Health and Rehabilitation Center located in Englewood, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

17. Defendant Linden Place Health and Rehabilitation Center, LLC ("Linden Place"), which operates a healthcare facility called Linden Place Health and Rehabilitation Center located

in Longmont, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

18. Defendant Parkview Care Center, LLC ("Parkview Care"), which operates a healthcare facility called Parkview Care Center located in Denver, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

19. Defendant Poudre Canyon Health and Rehabilitation Center, LLC ("Poudre Canyon"), which operates a healthcare facility called Poudre Canyon Health and Rehabilitation Center located in Fort Collins, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

20. Defendant South Platte Health and Rehabilitation Center, LLC ("South Platte"), which operates a healthcare facility called South Platte Health and Rehabilitation Center located in Brush, Colorado, is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Boulder, Colorado.

21. Defendant Loveland Elder Green House Homes for Life Enrichment Corp., which operates a healthcare facility called The Green House Homes at Mirasol ("Green House"), is a nonprofit corporation organized under the laws of the State of Colorado located in Loveland Colorado, with its principal place of business in Loveland, Colorado.

22. Vivage-Beecan operates, manages, and controls Defendants Allison Care, Arbor View, Ardent Health, Cambridge Care, Colonial Health, Creekside Village, Crestmoor Health, Denver North, Elevation Health, Linden Place, Parkview Care, Poudre Canyon, South Platte, and Green House (collective, the "Facilities" and each a "Facility").

## JURISDICTION AND VENUE

23. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

24. This Court has personal jurisdiction over Defendants, as they are incorporated under the laws of the State of Colorado and/or transact business in the State of Colorado. Additionally, Defendants derived revenue from goods and/or services rendered in the State of Colorado and from interstate commerce.

25. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because each of the Defendants transact business in this District, and a substantial part of the events or omissions giving rise to this action occurred in this District.

## BACKGROUND AND FACTS COMMON TO ALL COUNTS

26. connectRN is a provider of nursing healthcare services, created to provide nurses with flexible work opportunities and to help address the healthcare staffing crisis. connectRN provides per diem staffing of nurses and nursing assistants to its partners.

27. connectRN hires nursing staff as employees of connectRN and is responsible for paying all wages and applicable taxes for each employee.

28. connectRN partners with various healthcare facilities, such as, among others, hospitals, nursing homes, rehabilitation centers, and home health agencies.

29. Through its online platform, connectRN provides its partners with fully vetted and credentialed nursing staff on a temporary basis, who are chosen to fit each partner's specific staffing needs. The nursing staff provides services to connectRN's partners as independent contractors.

6

30. Vivage-Beecan is a group of entities that operate, manage, and control several healthcare facilities throughout the State of Colorado, including but not limited to the Facilities.

31. Vivage-Beecan is a partner of connectRN and uses connectRN's platform to provide nursing services to the Facilities.

32. Beecan Health entered into a Master Services Agreement with connectRN, effective January 12, 2023 (the "MSA"), pursuant to which connectRN made its system available to Beecan Health, which enabled Beecan Health to ensure its facilities have adequate nursing staff.

33. Pursuant to the MSA, connectRN provided nursing services to Beecan Health and its affiliates, which include Beecan CO, Beecan Management, and several of the Facilities.

34. Prior to the merger, connectRN entered into contracts with several facilities operated and controlled by Vivage, including but not limited to Allison Care, Arbor View, Cambridge Care, Denver North, and Parkview Care (each contract a "Vivage Facilities Contract" and each Facility a "Contracted Facility").

35. The MSA and the Vivage Facilities Contracts contain nearly identical provisions pertaining to, among other things, use of connectRN's platform, payment to connectRN for nursing services provided to the Facilities, and applicable finance charges for unpaid invoices.

36. The MSA and the Vivage Facilities Contracts expressly provide that permitted users of connectRN's platform include "any of Facility's Affiliates."

37. The MSA and Vivage Facilities Contracts each define "Affiliate" as "any entity which directly or indirectly controls, is controlled by, or is under common control with the subject entity."

38. Pursuant to the MSA and the Vivage Facilities Contracts, Beecan CO, Beecan Management, Vivage, and each of the Facilities not subject to the Vivage Facilities Contracts are all "Affiliates" of Beecan Health and the Contracted Facilities and, therefore, are permitted users of connectRN's platform.

39. Vivage-Beecan and each of the Facilities used, and benefitted from, connectRN's platform by obtaining necessary nursing staff to provide nursing services at the Facilities.

40. connectRN performed under the MSA and the Vivage Facilities Contracts by providing nursing services to the Facilities in accordance with the terms of the MSA and the Vivage Facilities Contracts.

41. The MSA and the Vivage Facilities Contracts each provide that connectRN would "[a]ssume sole and exclusive responsibility for the payment of [the nursing staff's] wages" for services performed for the Facilities.

42. connectRN paid the wages for each of its employees who provided nursing services to the Facilities.

43. The nursing services that connectRN provided to the Facilities generated revenue for the Facilities, which in turn generated revenue for Vivage-Beecan.

44. connectRN expected reasonable compensation for the nursing services it provided to the Facilities, and Vivage-Beecan and each of the Facilities knew that connectRN expected to be compensated for the services it provided.

45. The MSA obligated Beecan Health to pay connectRN for the nursing services that connectRN provided to each of the Facilities.

46. The Vivage Facilities Contracts, which concern Facilities that are operated and controlled by Vivage-Beecan, obligated the Contracted Facilities to pay connectRN for the nursing services that connectRN provided to those Facilities.

47. Based on the clear and unambiguous terms of the MSA, Beecan Health had knowledge of connectRN's expectation of compensation.

48. As the entity that operated and controlled the Contracted Facilities, Vivage-Beecan had knowledge of connectRN's reasonable expectation of compensation pursuant to the Vivage Facilities Contracts.

49. Vivage-Beecan and each of the Facilities accepted the benefits of the nursing services that connectRN provided with knowledge of connectRN's expectation of compensation.

50. The rates for connectRN's nursing services were attached to the MSA and to the Vivage Facilities Contracts, and were also available to Vivage-Beecan and the Facilities through connectRN's platform.

51. Beecan Health and the Contracted Facilities expressly agreed to pay the rates connectRN charged for the nursing services.

52. The MSA and the Vivage Facilities Contracts provide that payment of connectRN's invoices shall be made "within thirty (30) days of receipt of invoices."

53. The MSA and the Vivage Facilities Contracts provide further that invoices that become past due "will be charged a finance charge of one and half (1.5%) percent per month on the unpaid balance (annual percentage of 18%) or the maximum interest rate allowed by law, whichever is lower.  Facility agrees to pay the finance charge together with reasonable attorney's fees for the cost of collection."

54. Since the effective date of the MSA and each of the Vivage Facilities Contracts, connectRN provided nursing services to the Facilities, from which Vivage-Beecan benefited directly. connectRN invoiced each of the Facilities for the services connectRN provided.

55. The payments that the Facilities make to connectRN are controlled by Vivage-Beecan.

56. Over the past several months, the Facilities, under the operation and control of Vivage-Beecan, have failed to pay connectRN for the nursing services it provided.

57. As a result of Defendants' failure to pay connectRN for its services, there exists a total balance of approximately $968,000 due to connectRN for the services provided among the Facilities, inclusive of the finance charges provided for under the MSA and the Vivage Facilities Contracts.

58. Vivage-Beecan's failure to ensure that connectRN was paid for the services it provided to the Facilities harmed, and will continue to harm, connectRN.

### COUNT ONE – BREACH OF CONTRACT
**(Against Beecan Health and the Contracted Facilities)**

59. connectRN incorporates the allegations contained in Paragraphs 1–58, above, as if fully set forth herein.

60. The MSA and the Vivage Facilities Contracts are valid and legally enforceable contracts.

61. Pursuant to the MSA and the Vivage Facilities Contracts, connectRN provided nursing services to the Facilities and, in exchange for those services, Beecan Health and the Contracted Facilities agreed to pay connectRN.

62. Beecan Health and the Contracted Facilities have failed to make payments to connectRN for the nursing services that connectRN provided at each Facility.

63. Beecan Health and the Contracted Facilities have failed to ensure that the Facilities pay connectRN for the nursing services that connectRN provided at each Facility.

64. Beecan Health's and the Contracted Facilities' failure to pay connectRN, as well as their failure to ensure that each of the Facilities paid connectRN, for the nursing services that connectRN provided at each Facility has resulted in the following outstanding balances owed for each Facility: $6,732.58 for Allison Care; $165,806.01 for Arbor View; $444,446.33 for Ardent Health; $10,064.06 for Cambridge Care; $50,690.45 for Colonial Health; $999.15 for Creekside Village; $35,742.03 for Crestmoor Health; $16,159.36 for Denver North; $170,1190.80 for Elevation Health; $27,217.95 for Linden Place; $7,579.76 for Parkview Care; $12,630.81 for Poudre Canyon; $30,360.13 for South Platte; and $3,267.00 for Green House.

65. Beecan Health's and the Contracted Facilities' failure to pay connectRN for the nursing services that connectRN provided to each Facility is a breach of the MSA and of the Vivage Facilities Contracts.

66. As a direct and proximate result the breaches, connectRN incurred damages totaling at least $968,000.

**COUNT TWO – BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(Against Beecan Health and the Contracted Facilities)**

67. connectRN incorporates the allegations contained in Paragraphs 1–66, above, as if fully set forth herein.

68. As a valid and enforceable contract between connectRN and Beecan Health, the MSA carries with it an implied covenant of good faith and fair dealing.

11

69. As valid and enforceable contracts between connectRN and the Contracted Facilities, the Vivage Facilities Contracts each carry with them an implied covenant of good faith and fair dealing.

70. Beecan Health and the Contracted Facilities breached the covenant of good faith and fair dealing by, among other things, willfully inducing connectRN to continue providing nursing services to Vivage-Beecan and the Facilities pursuant to the MSA and the Vivage Facilities Contracts despite having no intention of paying connectRN for the nursing services it provides, intentionally and repeatedly refusing to pay connectRN, and depriving connectRN of the benefit of the bargain without just cause and for Beecan Health's and the Contracted Facilities' own benefit.

71. Beecan Health's and the Contracted Facilities' actions were taken in bad faith and done with reckless indifference to connectRN's interests by denying it the right to receive the benefits it reasonably expected to receive under the MSA and the Vivage Facilities Contracts.

72. As a direct and proximate result of Beecan Health's and the Contracted Facilities' breaches of the covenant of good faith and fair dealing, connectRN has been damaged.

## COUNT THREE – UNJUST ENRICHMENT
(Against All Defendants)

73. connectRN incorporates the allegations contained in Paragraphs 1–72, above, as if fully set forth herein.

74. connectRN conferred a measureable benefit on Defendants by providing nursing services to the Facilities, which Vivage-Beecan operated and controlled, enabling Defendants to generate revenue.

75. Defendants had knowledge of the benefit that it received from connectRN's services, as they relied on connectRN's services to provide nursing care to the Facilities.

76. connectRN expected compensation for the nursing services it provided to Defendants, and such expectation was reasonable.

77. Beecan Health and the Contracted Facilities expressly agreed to the rates that connectRN charged in exchange for the services connectRN provided.

78. With knowledge of connectRN's reasonable expectation of compensation, Vivage-Beecan directed the Facilities to utilize connectRN's services and accepted and retained the benefit that connectRN provided to Defendants.

79. Despite accepting and retaining the benefit of connectRN's services with knowledge that connectRN expected to be compensated for such services, Defendants failed to ensure that connectRN was compensated for the services connectRN provided to each of the Facilities.

80. Defendants' failure has been detrimental to connectRN, as connectRN paid the wages and taxes related to the nursing staff who provided services at the Facilities, but connectRN did not receive payment from Defendants.

81. The total balance owed to connectRN across all the Facilities, which are operated and controlled by Vivage-Beecan, is approximately $968,000, inclusive of interest.

82. It is unjust for Defendants to retain the benefit that connectRN provided to them without payment of the balance owed to connectRN.

83. Defendants have been unjustly enriched by the services provided by connectRN because Defendants failed to pay connectRN for the services provided.

## COUNT FOUR – QUANTUM MERUIT
### (Against All Defendants)

84. connectRN incorporates the allegations contained in Paragraphs 1–83, above, as if fully set forth herein.

85. connectRN conferred a measureable benefit on Defendants by providing nursing services to the Facilities, which Vivage-Beecan operated and controlled, enabling Defendants to generate revenue.

86. Defendants had knowledge of the benefit that they received from connectRN's services, as they relied on connectRN's services to provide nursing care to the Facilities.

87. connectRN expected compensation for the nursing services it provided to the Defendants, and such expectation was reasonable.

88. Beecan Health and the Contracted Facilities expressly agreed to the rates that connectRN charged in exchange for the services connectRN provided.

89. With knowledge of connectRN's reasonable expectation of compensation, Vivage-Beecan directed the Facilities to utilize connectRN's services and accepted the benefit that connectRN provided to Defendants.

90. Despite accepting the benefit of connectRN's services with knowledge that connectRN expected to be compensated for such services, Defendants failed to ensure that connectRN was compensated for the services connectRN provided to each of the Facilities.

91. Defendants' failure has been detrimental to connectRN, as connectRN paid the wages and taxes related to the nursing staff who provided services at the Facilities, but connectRN did not receive payment from Defendants.

92. The total balance owed to connectRN across all the Facilities, which are operated and controlled by Vivage-Beecan, is approximately $968,000, inclusive of interest.

93. It is unjust for Defendants to retain the benefit that connectRN provided to them without payment of the balance owed to connectRN.

94.     Defendants have been unjustly enriched by the services provided by connectRN because Defendants failed to pay connectRN for the services provided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff connectRN, Inc. respectfully seeks the following relief from the Court:

1. Judgment in its favor and against Defendants on all claims herein;

2. An award of damages in amount to be determined;

3. An award of pre- and post-judgment interest at the maximum legal rate;

4. An award of attorneys' fees, costs, and expenses; and

5. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

| | |
|---|---|
| Dated: November 18, 2024<br>Hartford, Connecticut | RESPECTFULLY SUBMITTED,<br><br>THE PLAINTIFF,<br>CONNECTRN, INC.<br><br><br>By:   */s/ Jennifer Black Strutt*<br>    Jennifer Black Strutt (#60230 )<br>    jstrutt@mccarter.com<br>    McCARTER & ENGLISH, LLP<br>    One Canterbury Green, 9th Floor<br>    201 Broad Street<br>    Stamford, Connecticut 06901<br>    Tel.: 203.399.5900<br>    Fax: 203.399.5800<br><br>    and<br><br>    Thomas J. Finn (*PHV Forthcoming*)<br>    tfinn@mccarter.com<br>    Justyn P. Stokely (*PHV Forthcoming*)<br>    jstokely@mccarter.com<br>    McCARTER & ENGLISH, LLP<br>    CityPlace I, 36th Floor<br>    185 Asylum Street<br>    Hartford, Connecticut 06103<br>    Tel.: 860.275.6700<br>    Fax: 860.560.5967 |